In the Matter of the **WELFARE OF B.M., Minor.**

No. C4–92–1139.

Supreme Court of Minnesota.

Feb. 26, 1993.

James J. Hulwi, Jr., Mankato, for appellant.

Michael K. Riley, Sr., MacKenzie, Gustafson, Lucas & Riley, St. Peter, for Nicollet County.

Carrie Guinn Marsh, Mankato, for guardian ad litem.

Janine Marie Steinke, Mankato, for mother.

GARDEBRING, Justice.

The court of appeals in an unpublished decision held that the evidence was insufficient to support the trial court's termination of parental rights of Larry Tietz in 2–year–old B.M. We granted the petitions of the county and the guardian ad litem for review.

Tietz and P.M., the child's mother, developed a relationship during a break in P.M.'s relationship with D.M. Tietz and P.M. decided to have a baby. P.M. became pregnant and the baby, B.M., was born in October of 1990. By then the relationship of Tietz and P.M. was apparently over, and P.M. left the baby with Catholic Charities, which placed it with a couple for adoption. A few weeks later P.M. changed her mind and said she wanted the baby. She had the baby for a couple weeks, leaving it with Tietz for 4 days. When Tietz returned the baby and the baby's things to P.M., P.M. noted that the baby had developed a diaper rash and that the baby's bottles apparently had not been cleaned. The trailer in which Tietz was living at that time apparently had neither water nor heat nor electricity. P.M. then decided she did not want to keep the baby, partly because of pressure from D.M., with whom she had been reunited, and she therefore contacted the county, which took custody under a voluntary placement. The baby was then given to foster parents. P.M. vacillated back and forth about wanting to be the mother of the child but visited the child only a couple times. Finally, in July 1991, the county filed a CHIPS petition.

Tietz testified that he knew all along that he was the child's biological father, but it was not until summer of 1991 that he sought visitation and custody. In July 1991 he admitted paternity, and in Novem-

ber he was declared to be the father after P.M. acknowledged his paternity. However, Tietz has contributed neither financial nor emotional support to the child or to the child's mother, prior to the termination of her parental rights.[1] The gist of his claim is that he was in legal limbo, without authority to visit or care for his child, and that if he had been given the same chance that P.M. was given, there would be no basis for terminating his rights.

The detailed findings of fact by the district court are supported by the evidence and the only question, in our opinion, is whether those facts justify termination, under the standards set out in Minn.Stat. § 260.221 (1992). We conclude that they do.

As the trial court stated, the pregnancy was planned and Tietz knew from the outset that he was B.M.'s biological father. Shortly after B.M.'s birth, Tietz had physical custody of the child for 4 days. During those 4 days he did not provide the child with proper care, nor has he done so at any time since then.

As the trial court put it, "His absolute disregard of his daughter's interest * * * evidences an intention to forsake the child and thus an intention to sever the parent child relationship." Moreover, the trial court determined that Tietz' later attempt to establish a father/child relationship was "somewhat disingenuous," noting that Tietz' stated reasons for wanting to establish a relationship were self-serving. One of the reasons presumedly was the apparent inability of Tietz' wife's to conceive a child; Tietz also apparently had made statements indicating that he wanted custody of the child so that he could be on the "gravy train" of AFDC. The trial court concluded, we believe justifiably, that Tietz had little regard for the best interests of the child.

These and other reasons in support of termination are set forth in the trial court's detailed order, which we hereby reinstate.

1. We are not concerned in this proceeding with

Reversed and termination order reinstated.

PAGE, J., took no part in the consideration or decision of this case.

the termination of P.M.'s parental rights.